First National Bank of Hastings v. Rogers et al.

---

THE FIRST NATIONAL BANK OF HASTINGS

*vs.*

WILLIAM K. ROGERS et al.

A valid levy upon sufficient personal property is *prima facie* a satisfaction of an execution. This presumption, however, may be rebutted by showing that the execution debtor has not been deprived of his property by reason of the levy.

In this case an execution issued upon a judgment against defendant Rogers was returned by the sheriff into the clerk's office on the 24th day of June, 1867. The return thereon was dated May 14, 1867, and certified that on May 4, 1867, a levy was made on a quantity of flour—property of Rogers—(the value of which was shown to exceed the amount of the

judgment,) and that the sheriff had the same in his possession. On May 20, 1867, the sheriff delivered up the flour to defendant Rogers, or to a firm of which defendant Rogers was a member, taking in lieu of such flour a good draft drawn by said firm. June 13, 1867, Rogers appealed from the judgment to the supreme court, and together with his co-defendants as sureties made an appeal bond in usual form to stay proceedings. At the July term, 1867, the judgment appealed from was affirmed in the supreme court, and on January 20, 1868, a mandate was issued accordingly and filed in the district court. Feb. 3, 1868, the draft was delivered up to Rogers, or to his firm, the sheriff accepting a bond of indemnity therefor. The flour was delivered up, the draft taken and delivered up, and the bond of indemnity taken without the advice or consent of the plaintiff, and, so far as appears, without his knowledge, and upon the request and consent of Rogers, the defendant. The judgment not having been paid: *Held*, that an action was properly brought upon the appeal bond.

*Held, further,* that to show that the sheriff gave up the flour as aforesaid, was not to *contradict* his return upon the execution.

*Held, further,* that upon the foregoing state of facts, the judgment and execution were not satisfied, either in favor of Rogers, or his co-defendants.

*Held, further,* that the flour and the draft having been given up as above stated, there was no subsisting levy, and that it was unnecessary to issue upon the judgment an *alias* execution, or an execution in the nature of a *venditioni exponas.*

This action was brought in the district court for Dakota county. The cause was tried before George L. Otis, Esq., referee, and judgment rendered in favor of the plaintiff. A case, with exceptions, was settled and allowed on the part of the defendants, and a motion made upon the same to set aside the judgment and for a new trial. The motion was denied, and the defendants appeal to this court.

The case is sufficiently presented in the opinion of the court.

SMITH & GILMAN for Appellants.

SMITH & VAN SLYCK for Respondent.

First National Bank of Hastings v. Rogers et al.

*By the Court.*—Berry, J.—This case was tried before George L. Otis, Esq., as referee, whose findings of fact, so far as material to be considered here, are as follows: On the 5th day of February, 1867, plaintiff recovered judgment against defendant Rogers in the district court for Dakota county for $5,380.50; on the 24th day of April, 1867, execution was issued, and on May 4th, 1867, duly levied by the sheriff of said county upon seven hundred and eighty barrels of flour, as property of Rogers, which was taken into possession by the sheriff, the value of the said flour at the time of the levy being $10,138.00. At or about the time of the levy, Rogers made an application to vacate the judgment, and while the application was pending, and about May 20, 1867, Rogers applied to the sheriff, who was then holding the flour under the levy, (proceedings upon the execution having been stayed pending the application to vacate the judgment,) and represented to him that flour was declining, and proposed that some arrangement be made whereby the flour should be given up that it might go forward to market. Rogers at the same time offered to give the sheriff a draft sufficient in amount to cover the execution, and all costs and expenses thereon, in case the flour was released. The sheriff without consulting the plaintiff, but acting wholly on his own judgment and discretion, acceded to the proposition, and received a good draft drawn by W. K. Rogers & Co., a firm composed of defendant Rogers, and one Vose, and procured by said Rogers, which by the consent of the sheriff and Rogers was deposited with one Howes, who was instructed to hold the same until the pending application was determined, and if it was denied, to collect the draft and apply so much of the proceeds as might be required to the satisfaction of the execution and its costs. Thereupon, and as a part of the arrangement, the

flour was given up to Rogers.  On or about June 9, 1867, the application to vacate having been denied, Howes, at the request of the counsel of the sheriff, remitted the draft for collection.  Afterwards, on June 13, 1867, Rogers appealed from the judgment to the supreme court, and on the same day Rogers, with his co-defendants Le Duc and Robinson as sureties, gave an appeal bond in due form and manner to stay proceedings until the final determination of the appeal. After the appeal had been taken and the appeal bond given, and before the draft had reached its destination and been presented for payment, at the request of W. K. Rogers & Co., and with the knowledge and consent of Rogers, the said Howes upon consultation with the sheriff's counsel, but without consulting the plaintiff in any manner, ordered the draft returned, and the same was returned without present- ation, and was never presented nor paid, but remained in the hands of Howes until about Feb. 3, 1868.  On the 24th day of June, 1867, the sheriff returned the execution and filed the same in the clerk's office with a return indorsed thereon as follows: " And I further certify and return that by virtue of an order of the within named court, made on the 3d day of May, 1867, I did on the 4th day of May, levy said execution upon seven hundred and sixty-six barrels of flour,  *  *  and fifteen barrels of flour,  *  *  making in all seven hundred and eighty-one barrels, as the property of W. K. Rogers, and that I now hold the same in my pos- session by virtue of said writ.  *  *

Dated the 14th day of May, 1867."

(Signed, &c.)

" Subsequently, and at the July term 1867, the judgment appealed from was affirmed in the supreme court.  After- wards and about February 3rd, 1868, Rogers applied to the sheriff to have the draft delivered up to him, offering to

give a bond of indemnity. The sheriff, assenting, took the bond of indemnity, and Howes by his direction delivered up the draft to Rogers. It does not appear that the plaintiff in any way authorized or consented to the release of the flour, from the levy, or to the taking of the draft, or the withdrawal of it from collection, or to the return of the execution, or to the re-delivery of the draft to Rogers, or to the taking of the bond of indemnity, but in all these matters the sheriff acted as advised by himself, and his counsel, and not upon the advice, counsel or direction of the plaintiff. On January 20th, 1868, a mandate issued from the supreme court to the district court, and was duly filed. On February 28th, 1868, an *alias* writ of execution was issued to the sheriff, which was returned under date of April 21, 1868, "no property found," and wholly unsatisfied. The judgment appealed from and affirmed by the supreme court is wholly unpaid.

This action is brought upon the appeal bond, before mentioned, and the referee finds, as a conclusion of law, that the plaintiff is entitled to recover the amount of the judgment appealed from, together with interest thereon and costs and disbursements, and orders judgment accordingly.

The defendants claim that the referee is not sustained, by the evidence, in finding that the flour levied upon and the draft were delivered up to Rogers, the defendant, by the sheriff Newell; the sheriff testifies positively that they were delivered to Rogers, so that it could hardly be said that the referee's finding is in this respect unsupported. But even if the facts were (as contended by defendants,) that they were delivered to W. K. Rogers & Co., we do not perceive that the effect of the delivery would be different from the effect of a delivery to Rogers, inasmuch as it is not disputed that they were delivered up at the instance of and by the con-

sent of Rogers, nor that Rogers was a member of the firm of W. K. Rogers & Co. (see *Bennett vs. McGrade, ante* 132) The defendants contend, that the levy upon the flour operates as a satisfaction of the judgment and execution. It is true that a valid levy upon sufficient personal property is *prima facie* a satisfaction of an execution : but the presumption arising from such a levy may be rebutted. *1st Nat. Bk. Hastings vs. Rogers,* 13 *Minn.* 407. *Bennett vs. McGrade, supra.* This presumption arises from the fact that the debtor has been deprived of his property in regular course of execution, and that therefore he ought to be exonerated from further liability, and the judgment creditor be compelled to look to the sheriff. But if the debtor has not been deprived of his property by reason of the levy, if it has been left in his possession, and eloigned or abandoned, and returned to him, or released from the levy and delivered up to a third person upon the debtor's request, the reason of the presumption, and the presumption, itself, cease. *Green vs. Burke,* 23 *Wend.* 490. *People vs. Hopson,* 1 *Denio,* 518. *Peck vs Tiffany,* 2 *N. Y.* 456. Then, upon the findings of the referee in this case, inasmuch as the flour and the draft were delivered up to Rogers so that he has lost no property by the levy, neither the levy upon the flour, nor the substitution of the draft operate in favor of Rogers as a satisfaction. Nor, as before remarked, would the case be altered if the referee had found (as the defendants insist that he should have found) that they were delivered up to W. K. Rogers & Co.

But it is urged, that the testimony tending to show that the flour had been released from the levy, was improperly admitted, and the objection is placed upon the ground that the testimony went to contradict the return of the sheriff upon the execution. As to this point, however, we

First National Bank of Hastings v. Rogers et al.

agree with the learned judge by whom the motion for a new trial in this case was denied below, that the testimony objected to did not go to contradict the return of the sheriff.

The effect of the return, so far as it is material to be considered here, is that on the 4th day of May, the property was levied upon, and that at the date of the return, the 14th day of May, thé levying officer had the same in his possession.    As remarked by the court below, if the return had not contained the latter statement, the presumption would be that the possession acquired by the levy continued to exist; but as there is no rule of law by which this presumption is made conclusive, it would, like presumptions of fact in ordinary cases, be disputable.    There is no reason, as we conceive, why the presumption of possession continued after May 14th,(the date of the return,) should be any less disputable, or more conclusive, than the presumption of possession arising from the fact of levy.    Then to show that the possession presumed from the levy on the 4th of May, or from the statement contained in the return, on the 14th of May, had been released, and had ceased to exist on the 20th of May, is not to *contradict* the sheriff's return, but only, at most, to rebut a presumption, which, because it is not conclusive, may be disputed.

It is, however, urged by the defendants, that as it was in the power of the sheriff to change or amend his return at any time before the execution was in fact returned into the clerk's office, which was in this case on the 24th day of June, the return is to be regarded as asserting that on *that* day the sheriff was in possession of the flour.    It is difficult to see why this is important, inasmuch as the appeal bond upon which this action is founded was made and entered into upon the 13th day of June, *before* the execution was returned to the clerk's office, and therefore the defendants

could not have executed the bond under any influence or mistaken impression arising from the *subsequent* returning of the execution. But we do not think that the return is to be taken as asserting anything more as to this matter of possession than that on the 14th day of May—the day of its date—the sheriff was in possession of the flour levied upon, notwithstanding the execution was not filed until June 24th. It does not assume to assert more, and we perceive no reason for giving to it a meaning beyond its terms. We are, therefore, of opinion that the testimony showing the release of the flour was properly received.

We do not deem it necessary to enter upon any extended discussion for the purpose of showing, that as the levy upon the flour did not operate to satisfy the judgment and execution as to Rogers, so it did not operate to satisfy the same as to his co-defendants, who are sureties upon the appeal bond. At the time when they executed the bond they were bound to inquire into the condition of affairs affecting their rights and liabilities, and the levy upon the flour having been released at that time, they must be presumed, as to the plaintiff, to have known that such was the fact. Under analagous circumstances a levy was held not to discharge the sureties upon the appeal bond in *Bennett vs. McGrade supra*, to which we refer. In that case the property levied on had been left by the levying officer in the possession of a firm composed of the execution debtor, McGrade, and one Seifert, and had been subsequently, and after the making of the appeal bond, disposed of by McGrade, all without any assent upon the part of the plaintiff in the execution, and in an action upon the appeal bond it was held that the levy did not operate as a satisfaction, either in favor of Mc-Grade, or of his sureties upon the appeal bond.

In the case at bar, the property levied on was *released*,

and *before* the execution of the appeal bond, without any assent upon the plaintiff's part. The case of *Bennett vs. McGrade* is conclusion upon the point, that the levy upon the flour in this case, was not a satisfaction of the judgment and execution. Nor do we think the fact that the draft was taken upon the release of the flour, and as a substitute for it, important. The draft was also released, so that Rogers, not having been deprived of his property in consequence of the taking of it, cannot rely upon its receipt as satisfaction; neither can his sureties. There is no pretence that they entered into the bond upon the faith, or even with knowledge, that the draft had been taken; and even if we presume a knowledge upon their part that the draft had been taken by the sheriff, and was held by or for him at the time when the appeal bond was made, the presumption will not help them. It was no more the plaintiff's business to see that the draft was not delivered up to Rogers, or to W. K. Rogers & Co., at Rogers' request, than it was the business of the sureties. The draft was not taken nor delivered up upon any direction or assent, or so far as appears, with any knowledge thereof upon the part of the plaintiff. The abandonment of the levy upon the flour, and the substitution of the draft and its subsequent release, were the work of Rogers, and the sheriff, without the concurrence of the plaintiff, and we can conceive of no reason why the plaintiff should be prejudiced or cut off from any remedy on account of these acts.

As between the plaintiff and the sureties, we discover no equities in favor of the latter. So far as the taking of the bond of indemnity is concerned, the defendants do not appear to claim, and we perceive no ground upon which they could claim, that it should operate to satisfy or suspend their liability upon the appeal bond. It follows also from

the views above expressed, that the questions, whether the *alias* execution was properly issued or not, and whether the right course would not have been to issue a writ in the nature of a *venditioni exponas,* instead of an *alias,* possess no practical importance in the case.

The flour having been released from the levy, and having been given up, as well as the draft, there was no longer a subsisting levy, and no occasion to issue any writ of execution for the purpose of establishing that fact.

This disposes of all the important points made by the defendants, and the result must be an affirmance of the order denying a new trial.

Ordered accordingly.