## C. E. SAMPSON v. F. C. PENNEY.[1]

February 17, 1922.

No. 22,564.

**New trial because of lack of evidence to support verdict.**

1. There is evidence that, in a sale of bees, all of the elements of fraud were present, if certain representations made were proven false. There is doubt as to whether the proof of falsity was sufficient. But a new trial must be granted on the ground that the evidence fails to sustain the verdict as to the amount of damages.

**Measure of damages, direct and consequential, from fraud in sale of diseased bees.**

2. The direct damage for fraud which induces a contract, is the difference in value between what the party defrauded parted with and

[1]Reported in 187 N. W. 135.

what he received. In addition to this, the party defrauded may recover consequential damages flowing naturally and proximately from the breach. If one through fraud procures a sale of animals afflicted with disease, the purchaser may recover for the loss of other animals of his own to which the disease is communicated, but not for loss of the subsequent increase of the diseased animals.

Action in the municipal court of Minneapolis to recover $75 upon a promissory note. The answer interposed a counterclaim for $1,000. The case was tried before Baldwin, J., and a jury which returned a verdict in favor of defendant for $720. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed.

*Jamison, Stinchfield & Mackall,* for appellant.

*Thompson, Hessian & Fletcher,* for respondent.

HALLAM, J.

This is an action on a promissory note for $75, given in part payment of the price of five colonies of bees and certain bee supplies. The answer admitted the note, and, as a counterclaim, set up damages for fraud in the sale of the bees. The jury gave defendant a verdict for $720, thus in effect giving damages for the fraud in the sum of $795. Plaintiff appeals.

1. The claim of defendant is that plaintiff represented that the bees "were all clean and free from disease," but that in fact they were afflicted with a disease known as "foul brood." There was evidence of an unqualified affirmation of a material fact made with intent that it should be acted on and that it was acted on. Assuming the evidence sufficient to prove that the bees were in fact diseased, there is ample proof of all the necessary elements of fraud. See Freeman v. F. P. Harbaugh Co. 114 Minn. 283, 130 N. W. 1110; Meland v. Youngberg, 124 Minn. 446, 145 N. W. 167, Ann. Cas. 1915B, 775.

Whether there is any evidence that the bees were in fact diseased is very doubtful. The purchase was made about May 1, 1919. Defendant placed the five colonies purchased near eight colonies of his own. The only evidence that the bees purchased were diseased

at the time of the purchase, must arise as an inference from the fact that, when inspected on July 9, a number of the hives then in existence were quite badly diseased. It is to be borne in mind, however, that the life of the bee in this season is from four to six weeks, that the disease of foul brood attacks the young larva and kills the young bee in the cell. Yet the 13 colonies which defendant possessed after the purchase had increased to 36 from May 1 to July 9. It is difficult to find in these facts a basis for an inference that the bees were diseased when purchased on May 1. But this aside, a new trial must be granted because of failure of the proof to sustain the verdict as of the amount of damages.

.The purchase price of the five colonies of bees and of the bee supplies was $150. As above stated defendant had eight other colonies of bees. Defendant's proof is that the colonies were worth $20 each. The court gave the jury no instruction as to the measure of damages, except to instruct them that the defendant should be compensated for that which he had lost. The jury must have found that this disease caused the destruction of approximately forty colonies of bees. The theory of the case must be that, notwithstanding the disease, the five colonies defendant purchased, and the eight colonies defendant then owned, produced these forty colonies, and that then the disease destroyed the whole. If it be conceded that the theory has been established as a fact, still we think the allowance of damages cannot be sustained.

The direct damage for fraud which induces a contract is the difference in value between what the party defrauded parted with and what he received. Ritko v. Grove, 102 Minn. 312, 113 N. W. 629. In addition to this, the party defrauded may recover consequential losses flowing naturally and proximately from the fraud. Where diseased animals are sold under a fraudulent representation that they are sound, the buyer is entitled to recover as damages the loss occasioned by the communication of the disease to other animals owned by the purchaser. 20 Cyc. 139; Wheeler v. Randall, 48 Ill. 182; Sherrod & S. v. Langdon & L. 21 Iowa, 518. Applying this principle, defendant would be entitled to damages on account of the loss of the other bees which he owned at the time of the purchase.

But damages for loss of the subsequent increase of the diseased bees seem to us quite too remote to be recovered.

Order reversed and new trial granted.