## JOHN WEST v. GEORGE L. WALKER.[1]

July 25, 1930.

No. 27,892.

[1]Reported in 231 N. W. 826.

*James M. Witherow* and *Henry C. Stiening,* for appellant.
*Christian G. Dosland* and *Goodwin LeRoy Dosland,* for respondent.

HOLT, J.

The appeal is from a judgment rendered on the pleadings.

The action is to recover damages for false and fraudulent misrepresentations whereby plaintiff was induced to enter an executory contract for the purchase of a building and lot in the city of Moorhead, Minnesota. The price was $7,500, of which approximately $3,300 has been paid and $1,000 has been expended in necessary repairs. It is alleged that the property was not worth more than $4,000. Plaintiff also avers that defendant in bad faith has served notice of cancelation of the contract, and he demands judgment for $4,300 and also asks such amount be applied on the contract and defendant be restrained from dispossessing him until the final adjudication herein. The answer, in addition to a general denial, alleged in substance that the contract of purchase was executed on March 28, 1924, that $300 was paid down, and that plaintiff agreed to pay the balance of the purchase price of $7,200, in monthly instalments of $100 each, with interest on deferred payments at seven per cent, and all taxes and assessments levied subsequent to 1923; that plaintiff entered into possession thereunder and has continued in possession ever since; that on December 1, 1928, plaintiff was in default in the monthly payments in the sum of $2,643.24 and $254.32 for taxes and penalties; that defendant has paid the registration tax on the contract; that on December 15, 1928, defendant caused notice of cancelation of the contract for the said default to be served on plaintiff; that the notice expired on January 14, 1929, without any payment, and that proof of the cancelation was duly filed for record and recorded in the register of deeds' office of Clay county, wherein is the property, on the 16th day of January, 1929. In addition the answer avers that plaintiff became aware of the

condition of the premises when he took possession in March, 1924, and has paid a number of monthly instalments since, as well as the taxes for several years, and thereby waived any claim for fraud; and also that on January 16, 1929, plaintiff was duly adjudged a ·bankrupt in the United States district court of Minnesota, sixth division. There was no reply.

The time to make good the default expired on January 14, 1929. The complaint is dated the next day, so the right to pay up and reinstate the contract was terminated before the action was begun. But even on the 15th, on proper showing, plaintiff could have prevented the recording of the proof which made the cancelation legally effective. Freeman v. Fehr, 132 Minn. 384, 157 N. W. 587; Follingstad v. Syverson, 160 Minn. 307, 200 N. W. 90. We think the instant case is not distinguishable from Olson v. N. P. Ry. Co. 126 Minn. 229, 148 N. W. 67, L. R. A. 1915F, 962, where it was held that a right of action for damages for fraudulent representations inducing the purchase of land upon an executory contract does not survive the. cancelation of the contract. Besides the two cases above cited, the Olson case has been recognized as stating the law in this state in International R. & S. Corp. v. Vanderpoel, 127 Minn. 89, 148 N. W. 895; Seerup v. Goraczkowski, 159 Minn. 364, 199 N. W. 94; Andresen v. Simon, 171 Minn. 168, 213 N. W. 563; Smith v. Dristig, 176 Minn. 601, 224 N. W. 157; Blythe v. Kujawa, 177 Minn. 79, 224 N. W. 464; Moorhead. Inv. Co. v. Carlson, 177 Minn. 174, 224 N. W. 842. When the cancelation is completed there remains to neither vendee nor vendor any cause of action against the other growing out of the land transaction, except that the vendee might sue for money had and received as stated in the last paragraph of the Olson case. The vendor cannot enforce a judgment previously obtained for an instalment of the purchase price. Warren v. Ward, 91 Minn. 254, 97 N. W. 886; Moorhead Inv. Co. v. Carlson, 177 Minn. 174, 224 N. W. 842. If a vendee has rescinded by his own act, the vendor cannot give the statutory notice so as to cut off the right of the vendee to bring an action to recover what he has parted with and which would be forfeited ·to the vendor

were the contract canceled. Blosick v. Warmbold, 151 Minn. 264, 187 N. W. 136.

The complaint in the instant case cannot be construed as one for money had and received with any better success than in the Olson case. Plaintiff did not rescind by his own act. In fact he is in possession and insists on retaining it, claiming that the contract is still subsisting notwithstanding the admission that it has been legally canceled or foreclosed in accordance with the statute.

Whatever may be said of the law established by the decision in Olson v. N. P. Ry. Co. 126 Minn. 229, 148 N. W. 67, L. R. A. 1915F, 962, it seems to attain just results in practice. This as well as other subsequent cases for damages shows little merit. Here, being in possession for years, plaintiff must from the first have known whether or not he was defrauded; and when, after many months of defaulted payments the contract is terminated legally and defendant is without remedy, this action for large damages is started.

We need not stop to consider whether the complaint states a good cause of action for fraudulent misrepresentations, nor whether the suit is moot because plaintiff was adjudged a bankrupt the same day the summons was served.

The judgment is affirmed.

WILSON, C. J. (concurring).

I concur in the result solely upon the doctrine of stare decisis.

STONE, J. (dissenting).

Try as I may, I cannot yield assent to the conclusion that a vendee of land, however gross and damaging the fraud inducing his purchase, cannot recover in *tort* for the deceit after a statutory cancelation of the *contract*. In practical application it works out this way. Suppose that A is induced by fraud to buy B's land for $10,000, $5,000 of which is paid down and the balance made due in six months. A is unable to meet the second payment when it accrues. B promptly serves notice of cancelation and, A's default continuing for 30 days (G. S. 1923, § 9576, as amended, 2 Mason, 1927, id.) the contract is canceled and he loses his $5,000. That result follows even though B did not own the land and the fraud

consisted in his wilful misrepresentation that he did. Nothwithstanding, if A does not discover until after the cancelation that he has been defrauded, he is cheated of his $5,000.

He cannot recover on his contract, for breach or otherwise. That is reasonable and right because the contract has been terminated in strict compliance with its own terms. But the vendee loses also his right to recover for the tort (deceit) which the vendor inflicted on him to his damage. That is unreasonable and wrong because the obligation so done away with was not based on the contract and did not depend thereon. Both the wrong and the resulting obligation arose, not from the terms of the agreement, but from the vendor's tort in inducing the vendee to make it and part with his $5,000.

The reasoning of Olson v. N. P. Ry. Co. 126 Minn. 229, 231, 148 N. W. 67, 68, L. R. A. 1915F, 962, is shortly this:

"The contract is legally terminated. Defendant [vendor] cannot now enforce the payment of the purchase price. * * * And it ought also to follow that plaintiff has no contract upon which to predicate damages. There is no longer any property received or to be received by plaintiff, the value of which could be deducted from the agreed purchase price. * * * Before damages may be recovered for not receiving as good property as was bought, it must appear that the property was accepted so that there remains an obligation to pay the purchase price. * * * The measure of damages [in deceit] * * * is the difference between the price paid and the value of the property bought."

In its conclusion that argument assumes that there must be property "received or to be received by plaintiff" and "an obligation to pay the purchase price" before a defrauded vendee can recover. That is obviously wrong because any one "who has been induced by false representations to pay out money may recover at least the amount so paid, with interest." 12 R. C. L. 456. It is also immaterial, I submit, that the vendor, having cheated the vendee out of his down payment, cannot "enforce the payment of the [balance of the] purchase price." That is unimportant because, although the

*contract* and its obligations have been ended by cancelation, the *tort* and its obligations remain. Nothing has occurred to cancel them. With the great deference always due an opinion of its author, I submit that the assertion in the Olson case [126 Minn. 231] that there could be no recovery because there was no longer a "contract upon which to predicate damages" ignores the complete distinction between the action for deceit and any action *on the contract* induced by the deceit.

"The wrong [of deceit] is not * * * breach of contract. It is tort." Schlechter v. Felton, 134 Minn. 143, 147, 158 N. W. 813, 815, L. R. A. 1917A, 556; Engen v. Merchants & M. State Bank, 164 Minn. 293, 298, 204 N. W. 963, 43 A. L. R. 610. It "consists of the fraudulent imposition of damage." 1 Street, Foundations of Legal Liability, 374. It is a "civil injury" (12 R. C. L. 228) entirely apart from that which follows breach of contract. Inasmuch as the cause of action arises from the tort, committed when the contract is induced, and not at all upon the contract, it seems to follow rather obviously that the existence or nonexistence of the contract is wholly immaterial except for the ascertainment of damage. It is for that reason that a contractor, suing in tort for deceit, is not at all hampered, except possibly in the amount of his recovery, by the fact that he is himself in default under the contract. Stearns v. Kennedy, 94 Minn. 439, 103 N. W. 212; annotation, L. R. A. 1915F, 962.

It is wrong to treat statutory cancelation as the equivalent of rescission. Like a rescission, it terminates the contract and all its obligations. But unlike rescission it does not restore the status quo. Because a rescission does that, it puts the party injured by fraud, if any, in a position where he suffers no damage. That bars his action for deceit because actual damage is an element of it. The statutory cancelation does not restore to the victim of fraud what he parted with. Therefore it cannot be treated as the equivalent of rescission and should not be attended by the effect, which a rescission has, of barring the action in tort for the deceit.

It is useless also to become involved in the proposition that an action for damages for fraud affirms the contract. That is true

only where there is a contract in existence to affirm. To the case above supposed, where A purchases land from B, let us add another wrongdoer, C, not a party to the contract but the deliberate maker nevertheless of fraudulent misrepresentations inducing A to make the purchase. Suppose that B and C conspire to defraud A by representing that B has good title when he has none and to divide the loot equally between them, and that they had received and divided A's $5,000 payment. The misrepresentations by C are themselves actionable as a tort. Busterud v. Farrington, 36 Minn. 320, 31 N. W. 360; Batchelder v. Stephenson, 150 Minn. 215, 184 N. W. 852. C was no party to the contract, so an action against him for the fraud could not affirm any contract. But he has made himself a tortfeasor and liable as such. That would require a judgment against him so long as A had done nothing to bar his cause of action. So long as A remained loser by the tort of C, his contract with B would be wholly immaterial in determining whether A should recover. It might be important only in determining how much. After a fraudulent vendor has taken advantage of his strict statutory right to cancel, the elimination of the contract is equally immaterial so long as there remains the tort of deceit and uncompensated damage arising therefrom.

The foregoing explains why in Follingstad v. Syverson, 160 Minn. 307, 200 N. W. 90, speaking for myself alone, I expressed doubt as to the correctness of the result in the Olson case. The statutory cancelation in its necessary effects is harsh enough. It seems to me that those effects are now unnecessarily increased, by judicial fiat, so that a defrauded vendee, through unavoidable cancelation, will lose, as the statute intends, all right of action on the contract, and in addition and what the statute does not intend, his cause of action in tort for the deceit. It is that to which I object.